[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
ACCELERATED
 OPINION
The following is an accelerated calendar appeal submitted to this court on the record and briefs of the parties. Appellant, Robert Green, appeals from a decision of the Geauga County Court of Common Pleas that, following a bench trial, entered judgment in favor of appellees, Burton Rubber Processing, Inc. and M.A. Hanna Company ("Burton Rubber" or "appellees"), on his claim for retaliatory discharge brought pursuant to R.C. 4123.90. For the reasons that follow, we affirm the judgment of the trial court.
The facts pertinent to this appeal are as follows. Appellant began working for Burton Rubber on November 23, 1983. During his tenure with the company, appellant held a variety of jobs including that of mill operator. As a mill operator, appellant was responsible for guiding a hot rubber compound through a series of milling processes that mixed the compound and flattened the material into thin slabs. Because of the extensive heat associated with the operation of the mill, appellees required all mill operators to wear arm protection. Burton Rubber provided its workers with long-sleeved shirts that provided the necessary arm protection.
Sometime in 1987, appellant was injured when a piece of rubber flipped back during the milling process, caught his left arm, and pulled his hand into the mill. As a result of this accident, appellant had his wrist crushed in the mill and suffered ligament damage. Appellant also sustained second and third degree burns that required skin grafts. At the time of the 1987 accident, appellant was wearing the company provided long-sleeved shirt buttoned at the cuff.
Following his injury of 1987, appellant continued to work as an employee of Burton Rubber. However, for a number of years, appellant could not continue his work as a mill operator.
Sometime in early 1995, appellant expressed a desire to return as a worker on the mill. At the time of appellant's request to return as a mill operator, he was unable to wear a long-sleeved shirt because of irritation on his left arm as a consequence of the 1987 accident. Appellees' safety director, Harry Wolfe, met with appellant and instructed him that he could not work on the mill without arm protection. In order to accommodate appellant's sensitivity with his arm, Mr. Wolfe ordered special safety sleeves that could be worn with short-sleeved shirts yet provide protection from the hot rubber of the mill.
Mr. Wolfe provided the safety sleeves to appellant and instructed him that he was required to wear arm protection when working on the mill. Thereafter, for a period of time, appellant wore the safety sleeves.
After working on the mill for a few months, appellant made a determination that he was capable of wearing long-sleeved shirts. Appellant then ordered long-sleeved shirts from Burton Rubber and began to wear the long-sleeved shirts instead of the safety sleeves when working on the mill. Appellees alleged that appellant was specifically told by his superiors that the sleeves needed to be rolled down and buttoned at the cuff pursuant to company policy for all mill operators.
On July 18, 1995, appellant sustained a new injury when working on the mill. Hot rubber came into contact with the skin of appellant's arm and hand causing an injury. As a result, appellant filed a workers' compensation claim.
Following the accident, appellees conducted an investigation as to the cause of the 1995 accident. There is no dispute that appellant, at the time of the 1995 accident, was working on the mill with his shirt sleeves unbuttoned and rolled back at least one cuff length. A management team determined that appellant had been specifically instructed that he was required to wear a long-sleeved shirt with the sleeves rolled down and buttoned, or to wear the molded sleeves that were purchased specifically for him. The management team determined that appellant knowingly violated these instructions and committed a dischargeable offense pursuant to the following plant rule:
 "Plant Rules (Unacceptable behavior which the Company cannot tolerate):
"A. Discharge Offenses
 "Some actions are serious in nature and require immediate discipline. These offenses will result in immediate suspension, and unless there are mitigating circumstances involved, will result in termination of employment.
"These infractions include, but are not limited to:
"* * *
 "3. Refusal to perform a work assignment or instructions by a supervisor or member of management (insubordination). * * *." (Emphasis sic.)
In a letter dated August 15, 1995, Burton Rubber notified appellant that it was immediately terminating his employment with the company as a result of his violation of a specific safety instruction. On January 12, 1996, appellant filed a complaint in the Geauga County Court of Common Pleas alleging, in pertinent part, that he was discharged in retaliation for filing a workers' compensation claim in violation of R.C. 4123.90.
Following extensive discovery, the matter was heard by the trial court on September 23, 1997. At trial, in addition to the evidence summarized above, appellant presented evidence concerning other employees who had violated safety rules and were subject to the following disciplinary schedule as set forth in appellees' employee handbook:
"* * * C. Other Offenses — Disciplinary Schedule:
 "First Offense — Verbal Warning Documented in Writing
"Second Offense — Written Warning
 "Third Offense — Disciplinary Suspension Without Pay
"Fourth Offense — Discharge
 "These infractions include, but are not limited to:"
* * *
 "2. Violating a safety rule or safety practice. * * *." (Emphasis sic.)
Appellant noted that appellees did not follow this four-step procedure when disciplining him for his alleged safety violation. Appellant further claimed that Burton Rubber's stated reason for his termination of employment was just a pretext for their discriminatory motive: retaliation for appellant's filing of a workers' compensation claim.
In addition, appellant testified that he did not intentionally violate any orders from his superiors regarding the need for arm protection. Appellant testified that he simply rolled his cuff back because the snap on his shirt, supplied by appellees, would not stay fastened. Notwithstanding the alleged defect in the shirt he was wearing, appellant acknowledged that Burton Rubber provided him approximately twelve long-sleeved shirts and that he had access to all of these shirts on the day of the accident.
Following the conclusion of all the evidence presented at trial, on September 24, 1997, the trial court rendered its judgment in favor of appellees. On November 19, 1997, the trial court issued findings of fact and conclusions of law. In short, the trial court found that appellant did not meet his burden to prove that he was dismissed from his job at Burton Rubber in retaliation for his filing of a workers' compensation claim. From the testimony presented at trial, the trial court believed that appellant "was discharged for failing to comply with a specific safety instruction to wear arm protection when working on the mill." From this judgment, appellant filed a timely notice of appeal and now presents the following two assignments of error:
 "I. The trial court erred as a matter of law in rendering its verdict for [appellees,] in that its judgment was not sustained by the evidence and was against the manifest weight of the evidence, and was, therefore, prejudicial against the rights of [appellant.]
 "II. The trial court erred in allowing in testimony the introduction of the Accident Investigation Report."
In the first assignment of error, appellant asserts that the trial court's judgment was against the manifest weight of the evidence. We disagree.
R.C. 4123.90 provides, in pertinent part, as follows:
 "No employer shall discharge, demote, reassign, or take punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer."
An employee establishes a prima facie case for retaliatory discharge when the employee proves the following: (1) an injury on the job; (2) the filing of a workers' compensation claim; and (3) the employee's discharge in contravention of R.C. 4123.90. Marshv. Lincoln Elec. Co. (Apr. 4, 1997), Lake App. No. 96-L-052, unreported, at 6-7. Once the employee establishes a prima facie case for retaliatory discharge, the burden of going forward with evidence shifts to the employer to set forth a legitimate, nonretaliatory reason for the discharge. Kilbarger v. AnchorHocking Glass Co. (1997), 120 Ohio App.3d 332, 338. If the employer sets forth a legitimate, nonretaliatory reason for the employee's discharge, the employee must establish that the reason given by the employer is pretextual and that the real reason for the discharge was the employee's protected activity under the Workers' Compensation Act. Id. While the burden of going forward with evidence may shift between the employee and the employer in these types of cases, the employee will always retain the ultimate burden of proof in an action filed under R.C. 4123.90.
In the present case, appellant attempted to prove that Burton Rubber discharged him from his job in retaliation for his filing of a workers' compensation claim. Appellees countered this accusation by presenting evidence that appellant was fired as a result of his failure to follow a supervisor's specific instructions regarding the use of protective clothing. While appellant presented evidence that appellees stated reason for his firing was pretextual, the trial court obviously gave more credence to the testimony presented on behalf of Burton Rubber.
When reviewing a claim that a trial court's judgment is against the manifest weight of the evidence, the Supreme Court of Ohio has held:
 "Judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279, syllabus. Accord Frankenmuth Mut. Ins. Co. v. Selz (1983), 6 Ohio St.3d 169, 172.
Additionally, the court has frequently stated:
 "[I]t is for the trial court to resolve disputes of fact and weigh the testimony and credibility of the witnesses. See Pasqualone v. Pasqualone
(1980), 63 Ohio St.2d 96, * * *." Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 23. (Parallel citations omitted.)
Even if this court were to disagree with the trial court's weighing of the evidence in this case, we are not in a position to substitute our opinion for that of the trial court. The trial judge was in the best position to view the witnesses and observe their demeanor, gestures and voice inflections in weighing the credibility of the witnesses. Consequently, as the trial court's decision is supported by some competent, credible evidence, there is no basis for this court to reverse the lower court's resolution of the factual conflict presented before it in this case. Appellant's first assignment of error is without merit.
In the second assignment of error, appellant contends that the trial court erred in permitting Burton Rubber to introduce a copy of the accident investigation report that appellees' safety director, Mr. Wolfe, prepared. Specifically, appellant objected at trial to a portion of the report which listed two persons who assisted appellant after the 1995 accident and alleged that he did not have his sleeves rolled down and buttoned at the time they gave him assistance. Appellant asserts that he was not provided a copy of Mr. Wolfe's report before trial pursuant to his discovery requests and "surely would have called as witnesses the individuals whose statements were in the [report]" if he had known of its existence. Appellant also objected at trial to the statements contained in the report as amounting to nothing more than inadmissible hearsay.
Despite appellant's objections, the trial court admitted the report into evidence. The trial court noted on the record that it would consider the report not for the truth of the statements that it contained but, rather, for the fact that statements had been reported to management regarding appellant's conduct.
The admissibility of evidence rests with the sound discretion of the trial court. Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269,271. In addition, "[a] trial court has broad discretion when imposing discovery sanctions. A reviewing court shall review these rulings only for an abuse of discretion." Nakoff v.Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, at the syllabus. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Steiner v. Custer
(1940), 137 Ohio St. 448; Conner v. Conner (1959), 170 Ohio St. 85;Chester Township v. Geauga Co. Budget Comm. (1976),48 Ohio St.2d 372." State v. Adams (1980),62 Ohio St.2d 151, 157-158. AccordBlakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
The present case is not one where appellant can seriously contend that appellees engaged in "trial by ambush." Appellees sought to introduce the disputed report only after appellant's case-in-chief wherein appellant already admitted that his sleeves were rolled up one cuff at the time of the accident. The fact that appellant's shirt was not rolled down and buttoned at the cuff was simply not in dispute at trial. Moreover, as to the alleged hearsay statements contained in the report, the trial court specifically noted that it was admitting the document for a limited, nonhearsay purpose. Under these circumstances, the trial court did not abuse its discretion by admitting Mr. Wolfe's report into evidence. Appellant's second assignment of error is without merit.
Based on the foregoing, the judgment of the trial court is affirmed. _________________________________ JUDGE WILLIAM M. O'NEILL
FORD, P.J.,
NADER, J., concur.